AO 91 (Rev 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT

for the

Middle District of Florida

United States of America
v.
GERALD EUGENE MAYHAM and
JOEL RAYMOND NAUTA

*Defendant(s)*

Case No. 8:14 MJ1113 MAP

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of July 2013 in the county of Pinellas in the Middle District of Florida, the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| Title 18, United States Code, Sections 1591 and 2 | Sex trafficking of children |
| Title 18, United States Code, Section 1594(c) | Conspiracy to engage in the sex trafficking of children |

This criminal complaint is based on these facts:

See attached affidavit

☑ Continued on the attached sheet.

*Complainant's signature*

William B. Jones, Special Agent, FBI

*Printed name and title*

Sworn to before me and signed in my presence.

Date: 2/24/14

*Judge's signature*

City and state: Tampa, FL

MARK A. PIZZO, U.S. Magistrate Judge

*Printed name and title*

## AFFIDAVIT

Your affiant, William B. Jones, being sworn to tell the truth, states the following:

### INTRODUCTION

1. Your affiant has been employed as a Special Agent with the Federal Bureau of Investigation ("FBI") since June 25, 1995. Beginning February, 2010, to the present, your affiant has been assigned to the FBI's Pinellas Resident Agency and investigating the sexual exploitation of children. Your affiant has been involved in numerous investigations relating to the exploitation of children, including offenses involving the dissemination of child pornography on the Internet via computer and the sex trafficking of minors. Your affiant has attended specialized training courses involving computers and child exploitation.

2. Your affiant is authorized to investigate violations of laws of the United States, and is a law enforcement officer with authority to execute arrest and search warrants issued under the authority of the United States.

3. The statements contained in this affidavit are based on your affiant's knowledge, as well as information provided to your affiant by other law enforcement officers. This affidavit is being submitted in support of a complaint. Your affiant has not included each and every fact known to him concerning this investigation. Your affiant has set forth only the facts necessary to establish probable cause to believe that in or about July 2013, GERALD EUGENE MAYHAM and JOEL RAYMOND NAUTA violated Title 18, United States Code, Sections 1591 and 2, which prohibit the sex trafficking of children. Further, during that same period, there is probable cause to believe that MAYHAM and NAUTA conspired to engage in the sex trafficking of children, in violation of Title 18, United States Code, Section 1594(c).

### STATEMENT OF PROBABLE CAUSE

4. The victim in this case is I.C., who was 16 years old during the relevant period. During that period, MAYHAM was 40 years old and NAUTA was 22 years old. I.C. lived with her mother in the Landmark at Savoy Square Apartments in Clearwater, Florida, in Pinellas County, in the Middle District of Florida. The apartment complex is owned/managed by Landmark Apartment Trust, which manages over 30,000 apartment units across the United States in Alabama, Florida, Georgia, North Carolina, South Carolina, Tennessee and Virginia. The Landmark Apartment Trust is a Maryland corporation, with executive offices in Richmond, Virginia. During the relevant period, MAYHAM resided in the same apartment complex; his wife served as the complex's manager.

5. On or about August 2, 2013, I.C.'s mother contacted the police to report that I.C. had run away from home. I.C.'s mother reported that her daughter had been acting out recently and that, approximately one week prior, she had seen I.C. with MAYHAM walking by the apartment complex's swimming pool. She called out to I.C., but she would not respond. As she approached them, she witnessed MAYHAM giving I.C. what I.C.'s mother believed to be drugs. I.C.'s mother continued to call her daughter's name. I.C.'s mother observed that MAYHAM was holding onto I.C.'s purse and tablet (handheld computer). When MAYHAM observed I.C.'s mother approaching, he fled the area on foot with I.C.'s purse and tablet. I.C.'s mother observed I.C. to be very lethargic and I.C. smelled of alcohol and marijuana. I.C.'s mother also suspected I.C. was under the influence of prescription drugs at the time.

6. I.C.'s mother reported that MAYHAM had previously communicated with I.C. on Facebook (via the internet) and through a cellular telephone that he provided to her. Your affiant has reviewed MAYHAM's communications with I.C. over Facebook. The messages show MAYHAM's attempts to have I.C. come outside to meet him and to smoke during the relevant period.

7. On August 10, 2013, after having been located by law enforcement as a runaway, I.C. recounted her experiences with MAYHAM and NAUTA in the preceding weeks.[1] I.C. first met MAYHAM at the apartment complex's playground. MAYHAM offered I.C. marijuana and asked her to smoke with him. I.C. agreed and smoked with MAYHAM and his friend, NAUTA. Thereafter, MAYHAM continued to hang out with I.C., even though the age gap between the two was approximately 24 years. While they were together, MAYHAM offered to buy I.C. various items, and he gave her a cellular telephone, which he used to contact I.C. when MAYHAM wanted her to sneak out. During I.C.'s time with MAYHAM and NAUTA, they provided her with marijuana, Xanax, and cocaine. MAYHAM and NAUTA also purchased alcohol for I.C. on several occasions.[2]

8. Eventually, MAYHAM began walking I.C. around the apartment complex and asking other men if they wanted to engage in commercial sex acts with I.C. At that time, MAYHAM just wanted money and would take whatever the men had and there was no set price for the sex acts.

---

[1] I.C. had run away from home without MAYHAM or NAUTA.

[2] During this investigation, law enforcement has interviewed a cooperating witness who worked at the apartment complex (CW1). CW1 identified MAYHAM, NAUTA and I.C. from photographs as being together on the grounds of the apartment complex during the relevant period.

9. During one occasion, I.C. was with MAYHAM and NAUTA when they were selling marijuana to an unknown male. NAUTA told the male, "She could be your girl for the right price." The male paid $25 to NAUTA, who kept $20 and gave $5 to I.C. I.C. left with the unknown male but was able to get away from him without having to perform any commercial sex acts.

10. However, on other occasions, usually on Friday nights or weekends, MAYHAM and NAUTA would walk I.C. around an area in northern Clearwater and solicit men in the area to pay $75 to engage in sex acts with I.C. Most of the men ended up paying MAYHAM $40 each, which bought them ten minutes with I.C., during which they would have intercourse with her. The sex acts typically occurred in each customer's apartment. After about ten minutes, MAYHAM and NAUTA would start banging on the customer's apartment door. I.C. told law enforcement that these encounters occurred more than ten times.

11. For these sex acts, MAYHAM and NAUTA provided I.C. with condoms that were purchased at Munchee's convenience store in Dunedin, Florida. On August 15, 2013, law enforcement officers interviewed employees at the convenience store. One of the employees recognized photographs of MAYHAM, NAUTA, and I.C. and advised that all three had come into the store together on a regular basis. According to this employee, MAYHAM, NAUTA, and I.C. usually came into the store late at night. The employee said that MAYHAM would purchase Colt 45 or Olde English beers and Magnum condoms. Your affiant has confirmed that Magnum condoms are not manufactured in the State of Florida.

12. I.C. reported having been threatened and physically assaulted by both MAYHAM and NAUTA while she was with them. Among other things, I.C. reported an incident where MAYHAM and NAUTA offered for an individual in a wheelchair to engage in a commercial sex act with her. On that occasion, the group went to the individual's residence, and I.C. took a shower at the residence. The individual did not end up engaging in a commercial sex act with I.C., and she left with MAYHAM and NAUTA. After they left the residence, NAUTA put his hands around I.C.'s neck while yelling at her, "I'll choke the shit out of you." Down the street, MAYHAM then grabbed I.C. around the neck with both hands and started choking her. MAYHAM lifted her off the ground and told NAUTA, "I don't play games with her." I.C. told law enforcement that MAYHAM and NAUTA had been angry with I.C. for failing to engage the individual while MAYHAM and NAUTA attempted to steal his prescription pills.

13. Law enforcement has identified this wheelchair-bound individual and interviewed him (CW2). CW2 advised that he first met I.C. in mid-July when he was coming home from a local ice cream shop. CW2 confirmed I.C.'s account of her

encounter, and he added that, after the group had left his residence, CW2 witnessed the white male (NAUTA) physically assault I.C. During his interview with law enforcement, CW2 positively identified from photographs I.C. as the victim and MAYHAM and NAUTA as the two men with her during this incident.

14. I.C. also recounted an incident when MAYHAM had taken her to the residence of another male. MAYHAM directed I.C. to remove her pants and sit on a table with her legs spread apart in front of this male. The man did not touch I.C. or otherwise engage in any commercial sex acts with I.C. The man did, however, give MAYHAM Xanax pills as payment for looking at I.C. After leaving the man's residence, MAYHAM gave some of the Xanax pills to I.C.

15. The male described in the paragraph immediately above was later identified and interviewed by law enforcement. The male positively identified MAYHAM and I.C. from photographs. The male recounted how he had met MAYHAM and I.C. at a local store before returning to the male's residence. The male confirmed the account above. The male added that I.C. did not appear to be 18 years of age or older.

16. Also during the investigation, law enforcement officers interviewed another witness (CW3), who was described as being a close friend of I.C. Among other things, CW3 reported having previously seen I.C. with MAYHAM. He had witnessed MAYHAM giving I.C. prescription pills on multiple occasions. In or about July 2013, MAYHAM had told CW3 of his plan to have I.C. engage in commercial sex acts. MAYHAM told CW3 that he would use prescription pills to cause I.C. to engage in those sex acts.

17. As stated above, I.C. was 16 years old during the relevant period. She reported to law enforcement that she told MAYHAM and NAUTA that she was 17 years old. Both MAYHAM and NAUTA were aware that I.C. attended high school, and they spent many days with her, thus having a reasonable opportunity to observe I.C. MAYHAM and NAUTA told I.C. to tell her customers that she was 19 years old.

18. Law enforcement has interviewed both NAUTA and MAYHAM. During a voluntary, non-custodial interview, NAUTA confirmed seeing I.C. with MAYHAM during the relevant period and also to accompanying MAYHAM and I.C. as they walked together in northern Clearwater. NAUTA confirmed that on those occasions, MAYHAM met with unidentified males and that I.C. then entered those males' residences for short periods of time. NAUTA added that MAYHAM admitted to having "pimped out" a girl for $40. NAUTA denied any involvement in any prostitution of I.C.

19. During a post-*Miranda* interview, MAYHAM admitted to hanging out with I.C. and to purchasing prescription pills for her. MAYHAM also confirmed that he drank Olde English beer. MAYHAM also stated that he walked with I.C. in northern Clearwater on occasion, but that any commercial sex acts involving I.C. were committed on her own accord. Although MAYHAM admitted having visited Munchee's, he denied purchasing condoms.

**CONCLUSION**

20. Based upon the foregoing, there is probable cause to believe that GERALD EUGENE MAYHAM and JOEL RAYMOND NAUTA violated Title 18, United States Code, Sections 1591 and 2, as well as Title 18, United States Code, Section 1594(c).

William B. Jones, Special Agent
Federal Bureau of Investigation

Sworn and subscribed before me
this 24 day of February, 2014.

MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE